TIREY L. AND MARGARET HUME, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hume v. Commissioner
Docket No. 39830-85
United States Tax Court
T.C. Memo 1988-458; 1988 Tax Ct. Memo LEXIS 502; 56 T.C.M. (CCH) 290; T.C.M. (RIA) 88458; September 22, 1988
Joe Deen, (specially recognized) for the petitioners. *503 Randy Heath, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent issued a notice of deficiency to petitioners for the years 1974 and 1975, dated August 14, 1985, determining deficiencies in their income tax in the amount of $ 10,976 for the year 1974 and $ 23,753 for the year 1975, and additions to tax under section 6653(a) of the Internal Revenue Code for each of those years in the amounts of $ 549 and $ 1,188, respectively. The issues for decision are basically whether Columbia Forge and Machine Works, Inc., an Oregon corporation (hereinafter Columbia), was a qualified Subchapter S corporation in each of the years in question, [1] and whether petitioners were negligent in failing to include in their gross incomes for the years 1974 and 1975 their share of the undistributed taxable income of Columbia for its fiscal years ended January 31, 1974 and 1975. *504 FINDINGS OF FACT A Stipulation of Facts and Supplemental Stipulation of Facts, with exhibits attached, were offered and received in evidence in this case, and are incorporated herein by reference. Only those facts necessary to a decision in this case are stated herein. Petitioners Tirey L. Hume and Margaret K. Hume are husband and wife whose legal residence at the time of filing the petition in this case was Vancouver, Washington. They filed joint income tax returns for the years 1974 and 1975 with the office of the Internal Revenue Service at Ogden, Utah. Columbia Forge Works, Inc. was incorporated under the laws of Oregon in 1946. It changed its name to Hume Industries in 1957 and discontinued the operation of its welding and forging business. Tirey Hume was the sole stockholder of Hume Industries. At the same time as the above change, a new corporation, Columbia Forge and Machine Works, Inc. (Columbia), was organized and incorporated in Oregon. Hume Industries continued to own the land, plant and machinery previously owned and used by Columbia Forge Works but the new Columbia became the successor operating company for Hume Industries. Columbia issued 300 shares *505 of stock, 100 shares each to petitioner, Louis McMullin and Jack E. Orr. Apparently, [2] all three were active in the business until about 1970 when petitioner became involved in the stock market. At some time prior to August of 1971 Columbia elected to be taxed as a qualified small business corporation under Subchapter S of the Code. Sections 1361-1379. On August 12, 1971, Orr and McMullin, as sellers, entered into a stock sale agreement with Skookum Company, a company whose business related to that of Columbia. The stock sale agreement provided, among other things, that whereas Skookum was constructing for Columbia and leasing to Columbia certain properties, Orr and McMullin agreed to give Skookum certain rights with respect to their Columbia stock and with respect to any rights they might acquire to purchase Hume's stock. Upon the agreement's becoming effective, McMullin and Orr each agreed that upon the death of either of them or at any time either of them might wish to sell his shares of Columbia, Skookum would have 30 days within which to purchase the stock for book value. If Skookum decided to buy the *506 stock the transaction would take place on February 1 following the date notice was given. If Skookum decided not to buy the sellers could sell the stock elsewhere. Upon execution of the agreement the stock certificates of Orr and McMullin were to be endorsed giving notice of the agreement, and then returned to Orr and McMullin who would, subject to the terms of the agreement, be entitled to exercise all the rights of ownership of the stock. The closing date would be 60 days after the buyer became obligated to purchase the stock. An escrow agent was to be appointed to hold the stock after notice of intent to sell was given. Louis McMullin died on December 14, 1973. Under the stock sale agreement Skookum had the option to purchase the McMullin shares on February 1, 1974. Prior to the date for exercise of the option, the Estate of Louis McMullin, Jack E. Orr and the Skookum Company, Inc., extended the period for exercising the option until February 1, 1975. Skookum exercised its option on February 1, 1975 with the actual transfer of the shares of stock from the estate to Skookum occurring on May 30, 1975. The purchase price was McMullin's share of the book value of Columbia at *507 the close of business on January 31, 1975. The Estate of McMullin received its share of the earnings of Columbia for each of the corporate fiscal years ended January 31, 1974 and 1975. Columbia filed its income tax returns for its fiscal years ended January 31, 1974 and January 31, 1975, as a qualifying Subchapter S Corporation. It also issued Forms K-1 to each of the three stockholders for 1974 and 1975. It reported undistributed taxable earnings of $ 93,916.74 for fiscal year 1974 of which petitioners share was $ 31,305.58 as reported on the K-1 form issued to petitioner. On its return for fiscal 1975, Columbia reported taxable income of $ 162,565.49 (corrected to $ 166,613.49 by agreement after audit.) In 1975 petitioner received a dividend distribution from Columbia in the amount of $ 53,666.69, and his share of the undistributed taxable income of Columbia for its fiscal year 1975 was $ 521.83. It does not appear from the record that petitioners reported any receipts or taxable income from Columbia on their 1974 return. Petitioners' return for 1975 does not report any dividend income or share of undistributed taxable income from Columbia; however, it does report a short *508 term capital gain on the sale of Columbia Forge & Machinery in the amount of $ 116,333.00. Petitioner sold his 100 shares of Columbia stock to Skookum on May 30, 1975. The agreement of sale was not put in evidence but an addendum to the agreement of sale (undated) was. It refers to petitioner as seller and Skookum as buyer. In it seller acknowledged receipt of $ 22,666.67 as a dividend distribution declared January 31, 1975 by Columbia on its outstanding shares, including the shares seller "intends" to sell pursuant to the Sale Agreement between petitioner and Skookum. The parties agreed that the purchase price to be paid pursuant to the sale agreement was to be reduced by the amount of dividends received by seller from Columbia after January 31, 1975. Therefore, the purchase price for the stock was reduced to $ 94,666.33. [3] Petitioner resigned as a director of Columbia as of May 30, 1975. In the supplemental stipulation of facts filed at the beginning of the trial the parties *509 agreed "that the only issue for resolution in this case is whether the status of Columbia Forge and Machine Works, Inc. as a qualifying Subchapter S Corporation was terminated for the fiscal years ended January 31, 1974 and January 31, 1975, based upon an alleged transfer of stock to the Skookum Company, an Oregon corporation". OPINION In the Notice of Deficiency issued to petitioners, which is the basis for this case, respondent determined that since the undistributed taxable income of the Subchapter S Corporation, Columbia Forge and Machine Works, Inc., was not reported on petitioners' tax returns for the years 1974 and 1975, their taxable income was increased $ 31,306.00 for 1974 and $ 54,189.00 for 1975. In their petition, filed October 29, 1985, petitioners alleged that in 1970 Tirey Hume sold all his capital stock of Columbia Forge to Hume Industries, Inc., all of the stock of which was owned by Tirey Hume, as a result of which Columbia's status as a qualified electing small business corporation was terminated. Respondent denied this allegation in his answer. In Tirey L. Hume and Margaret K. Hume, Hume Industries, Inc., v. Commissioner,T.C. Memo. 1982-525, *510 petitioner made the same argument. This Court held that "Mr. Hume was the true owner of one-third of the outstanding shares of Columbia from at least January 1, 1972 until May 31, 1975." 44 T.C.M. 11008, 1111; 51 P-H Memo T.C. par. 82,525 at 82-2381. By amendment to answer filed in this case respondent alleged that petitioners were collaterally estopped from maintaining that during the years in issue in this case they were not the owners of 100 shares of the stock of Columbia. Petitioners did not file a written reply. The Court agreed with respondent. However, when this case was called for trial, petitioner stated orally that they had recently discovered that one of the other one-third stockholders of Columbia, McMullin, had entered into a stock sale agreement dated August 12, 1971, with Skookum, which disqualified Columbia as a Subchapter S Corporation. Petitioner was advised that this had not been pleaded and was not an issue in this case unless properly raised. Respondent filed a motion for summary judgment which, for reasons stated in a Memorandum Sur Order issued by this Court under date of October 29, 1986, was denied. Petitioner was granted *511 leave to file an amendment to their petition raising the issue of the disqualification of Columbia as a Subchapter S Corporation by virtue of the agreement of sale of the McMullin stock. When this case was called for trial the parties filed a supplemental stipulation of Fact which stipulated "the only issue for resolution in this case is whether the status of Columbia Forge and Machine Works, Inc., as a qualifying Subchapter S corporation was terminated for the fiscal years ended January 31, 1974 and January 31, 1975 based upon an alleged transfer of stock to the Skookum Company, an Oregon corporation. [4]
Petitioners *512 have the burden of proving error in respondent's determination. They have offered very little evidence in support of their position that Columbia was disqualified as an electing small business corporation during the years here involved. In fact, most of their evidence and argument were directed to showing that petitioners' share of the earnings of Columbia for its fiscal years ending January 31, 1974 and 1975 were actually reported one way or another on petitioners' tax returns for the years 1974 and 1975, yet another issue that was not raised in the pleadings, which we will discuss later. Since petitioners are collaterally estopped from claiming that their 100 shares of Columbia stock were transferred prior to the years in issue, proof on this point would be unavailing. [5] Petitioners must therefore rely on the argument that the option McMullin and Orr gave to Skookum in 1971 to buy their stock if they wanted to sell it or if they died, was a transfer of their stock so as to disqualify Columbia as a Subchapter S corporation under section 1371(a)(2) of the 1954 Code. [6]
*513 Generally speaking a small business corporation means a domestic corporation which is not a member of an affiliated group and which does not (1) have more than 15 (presently 35) shareholders; (2) have as a shareholder a person who is not an individual (other than an estate); (3) have a non-resident alien as a stockholder; and (4) have more than one class of stock. Furthermore, a small business corporation has made an election under section 1372(a) which, under section 1372, is in effect for the taxable year. Under this definition Columbia clearly qualified for Subchapter S status for the years here involved unless the agreement entered into by McMullin and Orr with Skookum on August 12, 1971 qualified Skookum, a corporation and therefore not an "individual," as a shareholder in Columbia stock. Petitioner relies on section 318(a)(4) of the Code in support of his argument that Skookum, a corporation, was a shareholder in Columbia which disqualified it as a Subchapter S corporation.
Section 318 deals with constructive ownership of stock. Paragraph a provides: (a) For purposes of those *514 provisions of this subchapter to which the rules contained in this section are expressly made applicable -- * * * (4) If any person has an option to acquire stock, such stock shall be considered as owned by such person. * * * This provision is specifically limited to provisions of the subchapter which are expressly made applicable. Petitioner has pointed to no provision which would specifically make this provision applicable to the circumstances here present and we know of none. Furthermore, we do not think the provision was intended to apply to this circumstance. The constructive ownership rules are intended to apply primarily to family, partnership, estate and trust situations where it might be expected that someone in one of those categories could exercise influence on the nominal owner of the stock. Furthermore, constructive ownership of stock in a Subchapter S corporation does not make such person a shareholder in the corporation within the meaning of section 1371(a)(2). This Court held in Danenberg v. Commissioner,73 T.C. 370, 389-390 (1979), that an agreement *515 to transfer stock at some future date does not serve as a transfer of stock for Subchapter S purposes. It is well established that for purposes of determining who is a shareholder under the provisions of Subchapter S, beneficial ownership of the stock rather than technical legal title is controlling and the incidents of taxation are determined by the real ownership of the stock, and not where naked title lies. Danenberg v. Commissioner, supra at 930, and cases cited therein. It is clear from the evidence in this case that McMullin and his estate owned the 100 shares of stock in Columbia until they were transferred to Skookum by the estate in 1975. Under the terms of the stock sale agreement, Skookum had no title or ownership rights in the McMullin stock until it received either notice of McMullin's death or that he intended to sell, and then gave notice of the intention to buy, had an escrow agent appointed to take custody of the stock, and completed a valuation audit of the value of the stock. None of this occurred prior to February 1, 1975. There was no transfer of the stock prior *516 to McMullin's death. McMullin and his estate received one-third of the income from Columbia, the stock was included as an asset in McMullin's estate, and the estate received the proceeds of the sale of the stock from Skookum, and Skookum did not exercise its option to purchase the stock until 1975. Under the agreement Skookum simply had a right of first refusal if the stock was to be transferred. This did not place either true ownership of the stock, nor legal title thereto, in Skookum within the meaning of Subchapter S. We conclude that McMullin and his estate were shareholders of one-third of the stock of Columbia at least until February 1, 1975 and that Columbia continued to be a qualified Subchapter S corporation at least until that date. Consequently, one-third of the undistributed taxable income of Columbia for its fiscal years ending January 31, 1974 and 1975 was includible in the gross income of petitioners for their taxable years 1974 and 1975. At trial and on brief petitioners spent most of their time trying to convince the Court that they had reported and paid tax on all of petitioners' share of the undistributed taxable income of Columbia on their 1974 and 1975 *517 returns. In doing so they point out that they reported on their 1975 return $ 116,333 as short term capital gain on Columbia Forge and Machinery. The issued raised by the notice of deficiency was that petitioners had failed to report their share of the undistributed income of Columbia. Petitioners have provided us with no evidence that they did report it. Furthermore, their claim that they included on their returns all of their share of the undistributed income of Columbia was not raised in the pleadings and is not an issue before the Court. Furthermore, petitioner stipulated that the only issue in this case was whether the status of Columbia as a qualifying Subchapter S Corporation was terminated for the fiscal years in issue because of an alleged transfer of stock to Skookum Corporation. Under the circumstances we will not consider this argument. [7]
The final issue is *518 whether petitioners are liable for an addition to tax for negligence under section 6653(a). The burden of proof on that issue is on petitioners. They must prove that any understatement of tax was not due to negligence or intentional disregard of the Rules and regulations. They have failed to do so and we must conclude that the additions to tax are applicable. In Hume v. Commissioner,T.C. Memo. 1982-525, involving petitioners' tax deficiency for 1972, petitioners made the same claim that they made in their petition in this case, i.e. that Hume had sold his stock to Hume Industries, Inc. in 1970, and this Court held specifically against that claim. Hume v. Commissioner, supra. When this was brought to his attention in this case petitioner switched to a claim that the McMullin stock had been transferred which disqualified Columbia as a Subchapter S Corporation. We have dealt with that claim in this opinion, even though it was questionable that it had been timely raised. Petitioner then added a claim that because Mrs. Hume had not agreed to the Subchapter S status, it was not valid. Petitioner failed to prove this. And finally, they now raise *519 an issue which was not mentioned prior to the trial and concerning which they have offered no proof -- only a recitation by Tirey Hume on brief that may or may not have some merit. Altogether this is a classic disregard for the rules and regulations. Decision will be entered under Rule 155.
Footnotes
1. This same issue was raised for the year 1972 in Tirey L. Hume and Margaret K. Hume, Hume Industries, Inc. v. Commissioner,T.C. Memo. 1982-525↩. Reference is made to the opinion in that case for background information about petitioners and the corporation here involved, and the agreement that gave rise to this controversy. 2. Petitioner offered very little oral evidence at the trial. ↩
3. If the $ 22,666.67 dividend is added to the $ 94,666.33 reduced purchase price it totals $ 117,333.00, exactly $ 1,000 more than the amount reported by petitioner as short term capital gain. ↩
4. Despite the stipulation and the above history of this case, petitioners have continued to argue on brief that the original 100 shares of Columbia stock issued to Tirey Hume were owned by Hume Industries, Inc. and also that Margaret Hume did not agree to the election of Subchapter S status for Columbia, which invalidated the election. Petitioners are collaterally estopped by T.C. Memo. 1982-525↩ from raising the first argument, the second argument was not raised in the pleadings, and both arguments were waived by the supplemental stipulation of facts. 5. In fact, the evidence in this record is convincing that petitioners owned the 100 shares of Columbia stock until after February 1, 1975. ↩
6. Redesignated as section 1361(a) by sec. 2 of Pub. L. 97-354, 96 Stat. 1669 (1982), effective generally for taxable years beginning after Dec. 31, 1982. ↩
7. There is nothing in the record upon which we could decide such issue. If petitioners are entitled to any credit for taxes paid on items incorrectly reported this can be dealt with in the Rule 155 computations. ↩